# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA
*for use of* D.R.B. ELECTRIC, INC.,
*a New Mexico corporation,*

      Plaintiff,

      vs.                                          No. CIV 12-1251 WJ/KBM

GREAT AMERICAN INSURANCE COMPANY,
*an Ohio corporation,* and MV INDUSTRIES, INC.,
*a New Mexico corporation,*

      Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION
## TO ENFORCE SETTLEMENT AGREEMENT

THIS MATTER comes before the Court upon Plaintiff's Motion to Enforce Settlement Agreement, filed December 3, 2012 (**Doc. 33**).  Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's motion is well-taken and, accordingly, it is GRANTED.

### BACKGROUND

This is a Miller Act case (42 U.S.C. §3131-3134) involving payment for construction of a federal public works project at Los Alamos National Laboratory ("Los Alamos").  In connection with that project, Defendant MV Industries ("MVI") entered into a contract with Los Alamos in May 2010, and Plaintiff D.R.B. Electric ("Plaintiff" or "DRB") entered into a subcontract in August 2010.  Defendants MVI and Great American Insurance Company ("Great American," joining in the response, see Doc. 35) executed and delivered to the United States a payment bond

for the protection of all persons supplying labor and material in the prosecution of the work on the project. The complaint alleges that MVI as the contractor has not paid the subcontractor (DRB) for work performed under the governing contract.

The parties entered into a privately negotiated settlement on May 22, 2014 (Doc. 31), by which Defendants would pay Plaintiff $103,357.41 by October 1, 2014 (see attached exhibits). In this motion, Plaintiff DRB, moves to enforce the settlement agreement, claiming that Defendant breached the agreement by tendering only $66,831.90.[1]

## DISCUSSION

### I. Parties' Positions

#### A. Defendants' Position

MVI claims that at the time the parties entered into the settlement agreement, the understanding was that DRB was to be paid for work performed and not yet paid (this is disputed by Plaintiff). At the time MVI prepared to pay DRB pursuant to the terms of the agreement, MVI discovered that the amount of $36,526.02 had already been paid to another subcontractor for the exact same work that was now being invoiced by DRB to MVI—in other words, another subcontractor had already been paid for the same work that DRB had claimed it had not been paid for.[2] Defendants contend that by offsetting the amount of $36,526 from the agreed-on settlement amount, they have tendered the amount they have determined is due DRB for the work performed but not yet paid. Defendants maintain that the parties were under a "mutual

---

[1] Elsewhere, the amount tendered is represented as $66,831.**00**. *See* Doc. 34 at 3 (stating the amount as $66,831.00). The amounts represented by the parties are off by a few pennies in the pleadings. For instance, Defendant's response claims that $36,526.02 was paid to another subcontractor for the same work, where Plaintiff's reply uses the figure of $36,526.41.
[2] Specifically, the mistake MVI discovered was that of Custom Grading in billing DRB for work that already had been paid.

2

mistake" when they entered into the settlement agreement, and that the agreement should be reformed to accurately reflect what is owed for work performed that has not been paid by MVI.

B.      Plaintiff's Position

Plaintiff, on the other hand, contends that there is no mistake about Defendants' owing the full $103,357.41, and Defendants should be required to pay the additional amount of $36,526.  Plaintiffs explain that DRB's claim against Defendants was originally $276,122.76 (*see* Compl. at 7, Ex. 1), which included two "delay claims" totaling $172.764.85.  The settlement amount of $103,357.41 was a compromise settlement of a much larger claim by DRB asserted against MVI, and represented a substantial *reduction* on the amount actually due to DRB.  Plaintiff also asserts that DRB has no basis to offset any amount from the settlement agreement terms because $66,831.00 is not a "disputed amount," as Defendants contend.  Rather the only "disputed amount" from DRB's viewpoint was the $276,122.76 amount which was compromised down to $103.356.41 pursuant to the terms of the settlement agreement.

Plaintiff further explains that MVI had intended to pursue DRB's "delay claims" as part of a claim MVI asserted against Los Alamos, but prior to October 1, 2014 (the date agreed to by the parties for payment), MVI settled its claims, including DRB's claims, against Los Alamos.[3] Plaintiff states that the compromise between MVI and Los Alamos was taken into account when the parties came up with the $103,357.41 in the settlement agreement at issue.  Thus, there was no unilateral mistake on the part of MVI.

II.     Analysis

The Court agrees with Plaintiff's position.  The parties negotiated a settlement which was the result of a compromise rather than an amount based on payment for work performed.

---

[3] According to the terms of the Liquidating Agreement, see Doc. 33 at 14, MVI was responsible for "development and presentation of all claims against [Los Alamos]." Doc. 33 at 14.

The disputed amount (according to DRB) was $276,122.76 and ultimately settled for $103,356.41. The e-mail chain discussing the settlement agreement terms (Doc. 33, Ex. 1) refers to "settlement offer" rather than any reference to an amount based on actual work performed but not paid. Consequently, the $103,356.41 negotiated by the parties as the settlement amount has no correlation to what MVI actually owed DRB at the outset. *See* Ex. 1 at 2. Thus, whether $36,526.02 represents an amount that had already been paid to another subcontractor does not figure into the amount MVI owes DRB under the settlement agreement and should not be considered. Because the Court finds that the settlement agreement was based on the above facts understood by the parties, there is no need to consider whether mutual mistake existed.

### III.   Sanctions

Plaintiff claims that MVI's tendering of the check for $66,831.00 did *not* constitute full acceptance by DRB, and further, considers Defendants' contention that the tendering of the $66,831.00 check constitutes acceptance, as well as its claim of "mutual mistake" to be disingenuous and demonstrate bad faith. Plaintiff seeks a sanction of attorney fees on this basis. Plaintiff does not specify the rule or provision under which it seeks sanctions, but it will not be necessary to determine what Plaintiff had in mind, since the Court finds that Defendants' conduct does not justify an imposition of fees.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Enforce Settlement Agreement **(Doc. 33)** is hereby GRANTED for reasons described in this Order and that Defendant is hereby ordered to pay DRB an additional $36,526.02 in satisfaction of the settlement agreement entered into by the parties.

**IT IS FURTHER ORDERED** that Plaintiff's request for fees is DENIED.

A Final Judgment shall be entered separately.

_____
UNITED STATES DISTRICT JUDGE